Steven R. Disharoon (State Bar No. 273170)
sdisharoon@wshblaw.com
**WOOD, SMITH, HENNING & BERMAN LLP**
1401 Willow Pass Road, Suite 700
Concord, California 94520-7982
Phone: 925 222 3400 ♦ Fax: 925 356 8250

Robert C. Holtzapple (State Bar No. 145954)
bholtzapple@fbm.com
**FARELLA BRAUN & MARTEL LLP**
235 Montgomery Street, Suite 3000
San Francisco, California 94104
Phone: 415 954 4400 ♦ Fax: 415 954 4480

Attorneys for DEFENDANT, FETZER VINEYARDS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| SAZERAC COMPANY, INC., SAZERAC BRANDS, LLC,<br><br>            Plaintiffs,<br><br>    v.<br><br>FETZER VINEYARDS,<br><br>            Defendant. | Case No. 3:15-cv-04618-WHO<br><br>**DEFENDANT FETZER VINEYARDS' OPPOSITION TO SAZERAC'S MOTION IN LIMINE**<br><br>The Hon. William H. Orrick<br><br>Trial Date:            6/26/17 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. MATERIAL FACTS ..............................................................................................................1

III. DISCUSSION .........................................................................................................................5

    A. Sazerac Had at Least Eight Months to Test the Evidence at Issue, but Chose Not to Do So Despite Ample Opportunity, Meaning Fetzer Vineyards Has the Right to Substantiate the Evidence at Trial. ........................................................5

    B. Authority Cited by Sazerac Is Misconstrued and Supports Fetzer Vineyards. ..........8

    C. Sazerac's Hearsay Arguments Are Likewise Misplaced. .........................................10

        1) The two district court cases cited by Sazerac are not on point.....................10

        2) The evidence here is not hearsay, and if it is, it falls within an exception. ......................................................................................................12

IV. CONCLUSION .....................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Cook v. J & J Snack Foods Corp.*,
  No. 2:09-CV-02297-GEB, 2010 WL 3910478 (E.D. Cal. Jan. 28, 2010) .......................... 11

*Curtis v. Extra Space Storage, Inc.*,
  No. C 13-00319 WHA, 2013 WL 6073448, at *5 (N.D. Cal. Nov. 18, 2013) ................... 13

*E. & J. Gallo Winery v. Consorzio del Gallo Nero*,
  782 F. Supp. 457 (N.D. Cal. 1991) ................................................................................... 8

*Eclipse* and *STX, Inc. v. Bauer USA, Inc.*,
  No. C 96-1140 FMS, 1997 WL 337578 (N.D. Cal. June 5, 1997) ................................... 10

*Eclipse Assocs. Ltd. v. Data Gen. Corp.*,
  894 F.2d 1114 (9th Cir. 1990) ........................................................................................... 9

*Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*,
  No. CV F 10-0148 LJO JLT, 2011 WL 3348056 (E.D. Cal. Aug. 2, 2011) ....................... 8

*Hawkins v. Cavalli*,
  No. C 03-3668 PJH, 2006 WL 2724145, at *13 (N.D. Cal. Sept. 22, 2006) .................... 13

*Icon Enterprises Int'l, Inc. v. Am. Prod. Co.*, No. CV 04-1240 SVW PLAX, 2004 WL
  5644805, at *29-30 (C.D. Cal. Oct. 7, 2004) .................................................................... 9

*Internet Specialties West, Inc. v. ISPWest*, No. CV 05–3296 FMC AJWX, 2006 WL
  4568796 (C.D.Cal. Sept. 19, 2006) ...................................................................... 11, 12, 13

*Jerden v. Amstutz*,
  430 F.3d 1231, 1236-39 (9th Cir. 2005) ......................................................................... 7, 9

*Juice Generation, Inc. v. GS Enterprises LLC*,
  794 F.3d 1334 (Fed. Cir. 2015) ......................................................................................... 5

*Microsoft Corp. v. Lindows.com, Inc.*,
  No. C01-2115C, 2002 WL 31499324, at *16 (W.D. Wash. Mar. 15, 2002) ..................... 9

*Novell, Inc. v. Weird Stuff, Inc.*,
  No. C92-20467 JW/EAI, 1993 WL 13767335, at fn 15 (N.D. Cal. Aug. 2, 1993) ......... 10

*Padillas v. Stork–Gamco, Inc.*,
  186 F.3d 412, 417 (3d Cir.1999) ...................................................................................... 7

*Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*,
  743 F.2d 1039, 1047 (4th Cir. 1984) ............................................................................... 10

*Tektronix, Inc. v. Daktronics, Inc.*,
  534 F.2d 915, 917 (CCPA 1976) ...................................................................................... 6

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

*Ty Inc. v. Softbelly's Inc.*,
    No. 00 C 5230, 2006 WL 5111124, at *7–8 (N.D. Ill. Apr. 7, 2006) .................................. 12

*United States v. Lizarraga-Tirado,*
    789 F.3d 1107, 1109 (9th Cir. 2015) ................................................................................. 12

*United States v. May*,
    622 F.2d 1000, 1007 (9th Cir. 1980) ................................................................................. 12

**STATUTES**

Fed.R.Evid. 801 ............................................................................................................................ 12

Fed.R.Evid. 803 ............................................................................................................................ 13

Fed.R.Evid. 807 ............................................................................................................................ 13

**OTHER AUTHORITIES**

Thomas McCarthy, Trademarks and Unfair Competition § 11:88 (4th ed. 2001) ........................... 9

J.T. McCarthy, Trademarks and Unfair Competition § 17:5 (2d ed. 1984) .................................. 10

**I.  INTRODUCTION**

Through its motion in limine, Sazerac attempts to blind this Court to the real world, and cast itself as the victim of surprise regarding the existence and relevance of the "crowded field" of third-party buffalo brands.  In fact, Sazerac threatened legal action against many such brands, was aware from case inception that this would be a focus of Fetzer Vineyards' defense (as is standard in trademark litigation), and was provided the specific marks at issue no later than September 2016.  While Fetzer Vineyards produced in discovery everything needed to investigate and confirm any foundational issues regarding these buffalo marks, Sazerac pursued almost no such information, apparently, with the intent of springing this Motion on Fetzer Vineyards a mere month before trial.

The Motion asserts that it is unclear to Sazerac whether the other buffalo marks are/were used in commerce, or have a sufficient market presence.  Mot. at 1.  There are three fundamental flaws with this argument: (1) Fetzer Vineyards timely disclosed the relevant evidence and issues, as well as experts who would testify regarding them, yet Sazerac failed to pursue at deposition the foundational issues of which it now complains; (2) Fetzer Vineyards need not demonstrate "market presence" to the extent implied by Sazerac; and (3) even if the Court finds open questions as to foundation, Fetzer Vineyards has the right to answer those questions at trial.[1]  In addition, Sazerac's hearsay arguments are not legally sound, because the images of buffalo brands are not hearsay (since they are not statements), and even if they were, exceptions apply.

**II.  MATERIAL FACTS**

Sazerac has been on notice since the inception of this case that Fetzer Vineyards would be relying on the "crowded field" doctrine, based on the prevalence of third-party buffalo marks, and had ample opportunity to investigate such issues.  In fact, Fetzer Vineyards' first pleading in this action alerted Sazerac that an issue in this case is "the widespread use of bison images on alcoholic beverage labels by others, including use of a bison image as an iconic symbol of American

---

[1] While Fetzer Vineyards maintains that it has the right to make offers of proof through its experts at trial as to any relevant third-party marks, the declarations provided with this Opposition focus on 33 of the marks disclosed by Fetzer Vineyards that are particularly resistant to the criticisms leveled by Sazerac's Motion.  See Disharoon Dec. at ¶ 2 and **Exhibit A** thereto.

heritage." See Answer on file herein (Doc. No. 27), filed November 20, 2015, at ¶ 32.

Shortly thereafter, the parties submitted a joint case management statement, which stated that Fetzer Vineyards "contends that in light of the widespread use of buffalo images on labels for alcoholic beverages and other related products, Plaintiff's rights in its BUFFALO TRACE mark are narrow and cannot cover all buffalo imagery on alcoholic beverage labels." Joint CMC Statement on file herein (Doc. No. 30), filed December 29, 2015.   On January 14, 2016, Fetzer Vineyards served its initial disclosures, which listed several witnesses who would testify as to "third-party use of buffalo marks and designs." See Disharoon Dec. at ¶ 3 and **Exhibit B** thereto.

On January 29, 2016, Fetzer Vineyards propounded document requests on Sazerac for all documents reflecting third-party use of buffalo marks. See Disharoon Dec. at ¶ 4 and **Exhibit C** thereto at Requests 39, 41-42.  On February 29, 2016, Sazerac responded to the document requests, objected that requests for information as to other buffalo marks was "overbroad," but nonetheless agreed to produce documents in those categories (though limited to a five-year timeframe). See Disharoon Dec. at ¶ 5 and **Exhibit D** thereto at Requests 39, 41-42.  This overbreadth objection admits that third-party use of buffalo imagery is widespread.

On March 21, 2016, Fetzer Vineyards served interrogatories on Sazerac, which likewise included requests for information as to third-party use of buffalo marks. See Disharoon Dec. at ¶ 6 and **Exhibit E** thereto at Interrogatories 4 and 9.   On April 25, 2016, Sazerac responded to the interrogatories. It refused to answer Interrogatory 4, in part due to overbreadth, which, again, admits that third-party use of buffalo/bison images on "alcoholic beverages, food or other beverages" is so widespread that it would be "unduly burdensome" for Sazerac to list such uses in an interrogatory response. See Disharoon Dec. at ¶ 7 and **Exhibit F** thereto at Interrogatory 4.[2]

---

[2] Interrogatory No. 4 asked "Identify each third-party use of an image of a buffalo or bison in connection with the promotion of alcoholic beverages, food or other beverages." Sazerac's response:

> Sazerac specifically incorporates its General Responses and Objections set forth above to the extent applicable to this Interrogatory.  Sazerac object to this Interrogatory to the extent it seeks information that is neither relevant to this proceeding nor proportional to the needs of this case based on the importance of such discovery in resolving the specific issues of this case and Sazerac's relative access to

Sazerac did admit, in response to Interrogatory 9, that it had no evidence of actual confusion arising from third-party use of buffalo marks.  Exh. F to Disharoon Dec. at Interrogatory 9.

Beginning in August 2016, Sazerac began its rolling document production.  Included in these productions were no fewer than 13 coexistence and/or settlement agreements with third-parties who were using buffalo marks or images on their respective alcoholic beverage products: Bison Ridge whiskey, Buffalo Bayou Brewing Co., Buffalo Bayou Distillery, Buffalo Water Brewing Co., Buffalo Spit beer, Mad Buffalo Brewing Co., One Buffalo beer, Buffalo Peaks beer, Buffalo Sweat beer, Buffalo Creek wine, Buffalo Grill wines, Buffalo Gin, and the mark "Bufalo" (an agreement in which Sazerac promised not to pursue its Buffalo Trace mark beyond whiskey).  Disharoon Dec. at ¶ 8; see Proposed Exhibits 85-93, 110-111 (Doc. No. 88) (each was designated as confidential); Exh. U to Confidential Hadid Dec. in support of Opposition to MSJ (under seal).[3]

On September 16, 2016, Fetzer Vineyards served Sazerac with its expert disclosure.  See Disharoon Dec. at ¶ 9 and **Exhibit G** thereto.  The disclosure included two non-retained experts, Giancarlo Bianchetti and Rodrigo Maturana of Fetzer Vineyards, who were disclosed as having expertise on, *inter alia*, "the prevalence and styles of various types of labels in the food and beverage industry including, without limitation, the usage of animal imagery."  *Id.* at 2-3.

Also on September 16, 2016, Fetzer Vineyards disclosed two retained experts including, as relevant here, industry expert Tom Pirko.  *Id.* at 2.  Mr. Pirko's report was provided with the Disclosure, and is attached as Exhibit A to the Declaration of Thomas Hadid provided with Sazerac's moving papers pertaining to this Motion (hereinafter referred to as "Pirko Report").

In November 2016, Fetzer Vineyards took the depositions of Sazerac's two witnesses, Steve Wyant and Kris Comstock, and in December 2016, took the deposition of Sazerac's industry expert, Drew DeSarno.  At these depositions, Fetzer Vineyards produced and examined the

---

this information.  Sazerac also objects to this Interrogatory as overbroad, unduly burdensome, and oppressive because it is not sufficiently limited in scope.  Sazerac further objects to this Interrogatory on the ground that it consists of multiple interrogatories that must be counted against Defendant's limit.  On these bases, Sazerac refuses to answer Interrogatory Number 4.

[3] The Court does not permit motions to seal with respect to motions in limine.  Therefore, given Sazerac's designation of these documents as confidential pursuant to the Stipulated Protective Order, Fetzer Vineyards is not attaching copies of these documents to this public filing.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

1  witnesses regarding each of the following products at issue in this Motion: Buffalo Grove wine,

2  Big Sky Rye, Buffalo Sweat Bourbon Barrel Aged Ale, Grasovka Bison Grass Vodka, Bak's Bison

3  Grass Vodka, and Zubrowka Bison Brand Vodka.  Disharoon Dec. at ¶ 10.

4        On December 2, 2016, Sazerac took the deposition of Mr. Bianchetti, and, on December 8,

5  2016, took the deposition of Mr. Maturana.  Although Sazerac did not refer to the September 16,

6  2016 expert disclosure, Sazerac completed both depositions within the presumptive seven hour

7  limit, and thus had adequate time and opportunity to examine either witness on his disclosure as an

8  expert.  Disharoon Dec. at ¶ 11.  In response to the limited questioning presented to Mr. Bianchetti

9  (in his individual capacity) on third-party buffalo products, he testified that he was aware of

10 Buffalo Grove wine, as well as a beer and spirit that depict buffalo.  See Disharoon Dec. at ¶ 12

11 and **Exhibit H** thereto at 29:16-31:17.  Similarly, and although Mr. Maturana was asked few

12 questions about third-party buffalo marks, he did confirm in response to a specific question about

13 "Bison Ridge" that he was aware of a wine by that name.  See Disharoon Dec. at ¶ 13 and **Exhibit**

14 **I** thereto at 124:19-22.

15       Both Buffalo Grove wine and Bison Ridge wine are included in the brands at issue in this

16 Motion, as are the products exchanged at the depositions of Sazerac's witnesses, see Disharoon

17 Dec. at ¶¶ 2, 10.  This belies Sazerac's claim that Fetzer Vineyards "did not produce any

18 information about the alleged products [at issue] other than the images themselves."  Mot. at 2.

19       Finally, on December 12, 2016, Sazerac deposed Mr. Pirko.  Despite having received Mr.

20 Pirko's report nearly three months before the deposition, Sazerac asked few questions regarding

21 his knowledge of third-party uses of buffalo-type marks in the alcohol beverage industry, and

22 virtually no questions as to any of the marks attached as Exhibit C to his report (which forms the

23 focus of Sazerac's present Motion).  Although Sazerac marked Mr. Pirko's report, and Exhibit A to

24 that report, as exhibits to the deposition, Sazerac did not mark, show, or questioned Mr. Pirko

25 regarding the list of third-party buffalo marks attached to his report as Exhibit C.  Disharoon Dec.

26 at ¶ 14.  That was Sazerac's choice, and it should not affect Fetzer Vineyards' right to substantiate

27 these marks at trial.

28 / / /

## III.     DISCUSSION

### A.     Sazerac Had at Least Eight Months to Test the Evidence at Issue, but Chose Not to Do So Despite Ample Opportunity, Meaning Fetzer Vineyards Has the Right to Substantiate the Evidence at Trial.

As outlined above, Sazerac has known for years that others were using buffalo/bison terms or images, or both, in connection with the sale and promotion of alcoholic beverages. Indeed, Sazerac has entered into at least 13 different agreements with other producers, including producers of wines, beers, and spirits. With respect to this case, Sazerac has known since at least November 2015 that third-party buffalo marks/brands are at issue, and since at least September 2016 of *specific* marks on which Fetzer Vineyards will rely.

Moreover, at deposition, Sazerac's own witnesses, and its expert Drew DeSarno, admitted that they knew of at least some of these other buffalo marks. Wyant Depo. (**Exhibit J** to Disharoon Dec.) at 136:2-10 (Buffalo Grove), 146:14-24 (Bison Ridge), 172:12-15 (acknowledging general awareness of third-party buffalo products); Comstock Depo. (**Exhibit K** to Disharoon Dec.) at 251:5-12 (Buffalo Sweat), 263:4-264:15 (Buffalo Bayou), 270:14-272:1 (Buffalo Grove), 300:7-24 (Sazerac monitors trademark registrations that include the words "bison" and "buffalo," indicating it is aware of many of the third-party buffalo marks at issue), 328:1-12 (Bison Ridge); DeSarno Depo. (**Exhibit L** to Disharoon Dec.) at 184:18-20 (Buffalo Sweat). For Sazerac to now claim it is not familiar with the existence of these third-party products is not credible.

With respect to the *extent* of the use of those products, Sazerac both overstates what is necessary to establish same, and ignores that it made no attempt to investigate that in discovery, thus leaving this to be an issue Fetzer Vineyards has the right to establish at trial. Courts recognize that parties need not turn to detailed studies, surveys, or other scientific evidence of consumer awareness of third-party marks. Rather, as a recent Federal Circuit opinion makes clear, evidence of trademark registrations, product availability, and other indicia of the product's market presence are sufficient. See *Juice Generation, Inc. v. GS Enterprises LLC*, 794 F.3d 1334 (Fed. Cir. 2015).

In *Juice Generation, Inc.*, the Trademark Trial and Appeal Board discounted evidence of third-party use of similar marks to the one at issue, finding "there were no 'specifics regarding the extent of sales or promotional efforts surrounding the third-party marks and, thus, what impact, if any, these uses have made in the minds of the purchasing public.'" *Id.* at 1339 (quoting the Board's decision). The circuit court reversed, finding that the "Board's treatment of the evidence of third-party marks [did…] not adequately account for the apparent force of that evidence." *Id.*

The circuit court noted the following:

> The "specifics" as to the extent and impact of use of the third parties' marks may not have been proven, but in the circumstances here, Juice Generation's evidence is nonetheless powerful on its face. The fact that a considerable number of third parties use similar marks was shown in uncontradicted testimony. In addition, "[a] real evidentiary value of third party registrations per se is to show the sense in which ... a mark is used in ordinary parlance." 2 McCarthy on Trademarks and Unfair Competition § 11:90 (4th ed.2015) (emphasis added). "Third party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak." *Id.*; see *Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 917 (CCPA 1976) (even if "there is no evidence of actual use" of "third-party registrations," such registrations "may be given some weight to show the meaning of a mark in the same way that dictionaries are used").

*Id.*

Here, as in *Juice Generation, Inc.*, Sazerac presented no evidence contradicting Fetzer Vineyards' evidence of third-party buffalo marks (it merely raises technical objections to that evidence). Nor can Sazerac genuinely dispute that many of the marks at issue have active registrations.[4] Accordingly, the evidence should be considered.

In addition, the Ninth Circuit has emphasized that proponents of evidence must be given a reasonable opportunity to authenticate it, particularly, when, as here, opponents delay in raising

---

[4] See, e.g., Trademark Registration Nos. 4133765 ("GRASOVKA" and associated buffalo imagery for alcohol beverages except beer); 3267582 ("BUFFALO GROVE" for wine), 3939497 ("BISON" for beer), 4345407 ("BISON RIDGE" for whiskey), 4211641 ("Bison Ridge" for wine), 2522797 ("BUFFALO GOLD" for beer), 5001182 (buffalo imagery and the words "BUFFALO BAYOU BREWING CO." for beer), 4590976 ("BUFFALO BILL'S BREWERY" for beer), 2014792 ("BUFFALO BUTT" for beer), 4945804 ("NEW HELVETIA BUFFALO CRAFT LAGER" for beer), 5083910 ("BUFFALO PEAKS" for beer), 3996531 (buffalo imagery and the words "TALLGRASS BREWING CO. BUFFALO SWEAT STOUT" for beer), 4961240 ("BUFFALO SPIT" for beer), 3776577 (buffalo imagery and the words "BAK'S BISON GRASS VODKA" for spirits), 3913086 (buffalo imagery and the words "ZUBROWKA ZU THE ORIGINAL BISON GRASS FLAVORED VODKA PRODUCT OF POLAND FROM THE FINEST SELECT GRAIN" for alcohol beverages except beer).

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

1  objections to the evidence. *Jerden v. Amstutz*, 430 F.3d 1231, 1236-39 (9th Cir. 2005), opinion
2  amended on denial of reh'g, No. 04-35889, 2006 WL 60668 (9th Cir. Jan. 12, 2006).  In *Jerden*,
3  the defendant objected late to the testimony of one of the plaintiff's witnesses, and the trial court
4  largely sustained the objection. *Id.* at 1235-36.  The Ninth Circuit reversed, holding that the
5  exclusion of the evidence was an abuse of discretion, because it "unfairly prevented Plaintiffs from
6  providing a curative response." *Id.* at 1237.
7        The court continued, "[w]e have adhered to the general rule that neither the district court
8  nor the opposing party may unfairly deprive parties of the opportunity to lay a foundation in
9  support of their evidence." *Id.*  While the context of the *Jerden* court was a late objection at trial,
10 the Ninth Circuit clarified that the rule applies with equal force before trial:

> Also, the district court may not exclude evidence *before trial* without allowing the parties to lay a foundation for its admission. [Citation.]  Our prior decisions viewed together support the principle that an objection to admission of evidence on foundational grounds must give the basis for objection in a timely way to permit the possibility of cure.  This principle is reinforced by decisions of other circuits that have required district courts to give parties an opportunity to respond to objections to the foundation of their evidence. "Given the 'liberal thrust' of the federal rules it is particularly important that the side trying to defend the admission of evidence be given an adequate chance to do so." *Padillas v. Stork–Gamco, Inc.*, 186 F.3d 412, 417 (3d Cir.1999) (citation omitted).

16 *Id.* (emphasis added).
17       In light of this rule that litigants be given an opportunity to establish a foundation for their
18 evidence, Fetzer Vineyards must have the right to do so here.  Sazerac's failure to seek the
19 foundational information in discovery, despite ample opportunity, does not mean that Fetzer
20 Vineyards is somehow prevented from establishing at trial a foundation for the third-party marks
21 that it disclosed long ago in discovery.  Nevertheless, Fetzer Vineyards provides with this
22 Opposition declarations that establish the foundation for many of the marks at issue, and intends to
23 make additional and similar offers of proof at trial through its experts as appropriate.
24       Specifically, the Declaration of Steven R. Disharoon, counsel for Fetzer Vineyards,
25 identifies various sources for numerous marks/brands at issue that demonstrate their active status,
26 market presence, and the fact the images produced in discovery correspond with each particular
27 product; the declaration of Margo Evashevski, an investigator and paid consultant retained by
28 Fetzer Vineyards, provides further, similar support.  Notably, this information is relevant to

foundation only, and is separately something on which Fetzer Vineyards' experts are entitled to rely. See, e.g., Pirko Report at 1 (noting that he is relying, in part, on information provided by counsel to form his opinions).

### B. Authority Cited by Sazerac Is Misconstrued and Supports Fetzer Vineyards.

Sazerac relies on *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 457 (N.D. Cal. 1991). Mot. at 3. However, that case is distinguishable since it concerned the strength of the word mark "Gallo" for wine, which had achieved "virtually universal recognition as a trademark for wine," and there was no evidence that the other "Gallo" marks alleged by the defendant had any meaningful connection to wine. *Id.* at 459.

The strength of the Gallo mark could not genuinely be challenged. This has little to do with Sazerac's attempt to use the buffalo associated with its bourbon product to prevent Fetzer Vineyards from using a buffalo image on its 1000 Stories wine product. Not only has Sazerac produced little or no evidence that the alleged Buffalo Trace marks/dress have gained significant recognition in the *bourbon* space, it produced no evidence at all that its alleged Buffalo Trace marks/dress have any recognition, far less "virtually universal recognition," in the *wine* space. The third-party marks offered by Fetzer Vineyards are directly relevant to those issues, and include third-party uses on alcoholic beverages including wine (a category that includes 1000 Stories), spirits (a category that includes Buffalo Trace bourbon), and beer.

Sazerac appears to misread the next case on which it relies: *Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, No. CV F 10-0148 LJO JLT, 2011 WL 3348056 (E.D. Cal. Aug. 2, 2011). Mot. at 3. Contrary to Sazerac's arguments, the court in that case made no findings as to the third-party marks at issue, but rather noted that the *plaintiff* criticized the defendant's reliance on them. *Id.* at *18. In fact, the court concluded that the plaintiff's mark was strong due to its 40 years of market presence, and said nothing about third-party marks with respect to this finding. *Id.*

Sazerac also misconstrues the *Icon Enters. Int'l* case. Mot. at 3, 4. There, the court first emphasized the rule that "[e]vidence of third party use of similar marks on similar goods is admissible and relevant to show that the mark is relatively weak and entitled to only a narrow scope of protection." *Icon Enterprises Int'l, Inc. v. Am. Prod. Co.*, No. CV 04-1240 SVW PLAX,

2004 WL 5644805, at *29-30 (C.D. Cal. Oct. 7, 2004) (citing J. Thomas McCarthy, Trademarks and Unfair Competition § 11:88 (4th ed. 2001) (internal citations omitted)).  The court then concluded that the defendant had not *yet* established that the third-party marks had been used and were sufficiently established.  *Id.* at 31.

Importantly, the *Icon Enterprises* court not only allowed the defendant to proffer evidence on this point at the time of the hearing on the motion in limine, it also provided the defendant an additional 10 days following the hearing to supply any further supporting evidence.  *Id.*  This is consistent with the rule, outlined above, that parties must be afforded every reasonable opportunity to lay a foundation for their evidence, including the right to cure what are found to be deficient offers of proof.  *Jerden*, 430 F.3d at 1237.  The same should hold true here: Fetzer Vineyards maintains that it is entitled to establish the foundation for its evidence at trial, but if the Court disagrees, the declarations submitted herewith are sufficient at least as to 33 of the marks; if the Court disagrees with that as well, Fetzer Vineyards requests the same opportunity to cure provided by the court in *Icon Enters. Int'l*.

Next, Sazerac cites *Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114 (9th Cir. 1990).  That reliance is misplaced.  *Eclipse* affirmed the district court's decision to exclude evidence of third-party marks in completely unrelated industries, which the Ninth Circuit agreed was proper due to the irrelevance of such evidence.  *Id.* at 1119.[5]  Numerous courts, as well as the leading treatise on trademarks, have concluded in the nearly 30 years since the *Eclipse* decision that it is limited to the facts there at issue.  Sazerac's own authority supports this, recognizing that *Eclipse* "cannot be taken literally" and is "limited to unrelated uses."  *Icon Enterprises Int'l, Inc.*, 2004 WL 5644805, at *30 (quoting J. Thomas McCarthy, Trademarks and Unfair Competition § 11:88 (4th ed. 2001); accord *Microsoft Corp. v. Lindows.com, Inc.*, No. C01-2115C, 2002 WL 31499324, at *16 (W.D. Wash. Mar. 15, 2002).

---

[5] In *Eclipse*, the plaintiff and defendant each used "ECLIPSE" in connection with the marketing and sale of software and computer related publications or products.  The Ninth Circuit found that "[t]he fact that a floor cleaning product, commercial laundry folding equipment and industrial process hearing equipment bear the name ECLIPSE is irrelevant to the case at bar and was correctly excluded."  *Id.* at 1119.

1    There is no doubt that use of similar third-party marks in the same or similar industry is
2 relevant to the likelihood of confusion analysis, as well as the distinctiveness standards for trade
3 dress claims.  See, e.g., *id.*; see also *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d
4 1039, 1047 (4th Cir. 1984) (third-party use of similar marks is relevant to "'strength' and
5 'distinctiveness'") (citing 1 J.T. McCarthy, Trademarks and Unfair Competition § 17:5 at 779–780
6 (2d ed. 1984)).  Since the instant Motion undisputedly involves marks in the same beverage
7 industry in which Buffalo Trace is located (and, indeed, in the same industry that Buffalo Trace
8 has challenged other users of buffalo/bison terms, images, or both), *Eclipse* has no application
9 here.

10    Sazerac's argument in this regard appears to be that the "failure to prosecute" third-parties
11 who use buffalo marks is irrelevant.  See Mot. at 4 (citing *Eclipse Assocs. Ltd.*, *supra*, and *STX,*
12 *Inc. v. Bauer USA, Inc.*, No. C 96-1140 FMS, 1997 WL 337578 (N.D. Cal. June 5, 1997) for the
13 proposition that evidence of other "potential infringers" is irrelevant).  In *STX, Inc.*, however, the
14 issue was whether plaintiff had abandoned its mark (and the court held only that it "cannot say, as
15 a matter of law, that by failing to take action against" the other alleged infringers "plaintiff has
16 abandoned the mark").

17    It is true that, in considering whether plaintiff holds a valid mark, evidence of other
18 potential infringers is relevant only if it reaches the point of "abandonment."  *Sweetheart Plastics*,
19 Inc., 743 F.2d at 1047; cf *Novell, Inc. v. Weird Stuff, Inc.*, No. C92-20467 JW/EAI, 1993 WL
20 13767335, at fn 15 (N.D. Cal. Aug. 2, 1993).   The doctrine of "abandonment" is not presented by
21 the instant motion, meaning Sazerac's reliance on these authorities/arguments is misplaced.
22 Rather, the issue is about the *strength* and *distinctiveness* of the alleged Buffalo Trace
23 marks/dress, and the widespread use of buffalo marks by others in the alcoholic beverage market
24 undisputedly bears on that valid and relevant legal issue.  See generally *supra*; see also MSJ Order
25 (Doc. No. 80) at 16 (noting that third-party use of buffalo imagery would be relevant if sufficiently
26 similar to "Sazerac's *particular* buffalo mark(s)") (emphasis in original).

27    **C.**    **Sazerac's Hearsay Arguments Are Likewise Misplaced.**
28       **1)**    **The two district court cases cited by Sazerac are not on point.**

Sazerac's final argument is that the prevalence of third-party buffalo marks, as demonstrated through imagery of the same, somehow constitutes hearsay simply because many (but not all) of the images were obtained from the internet.[6]  Sazerac attempts to support this argument with two district court cases, one from outside this jurisdiction.  As will be shown, Sazerac's argument ignores critical distinctions from the two district court cases cited, and avoids discussing the fact that the images do not implicate the hearsay rule and, in any event, there are valid hearsay exceptions.

The only case within the Ninth Circuit cited by Sazerac is *Cook v. J & J Snack Foods Corp.*, No. 2:09-CV-02297-GEB, 2010 WL 3910478 (E.D. Cal. Jan. 28, 2010).  However, this case says very little about hearsay, and instead focuses primarily on *foundation* issues.  Specifically, the defendant's attorney there simply attached web printouts to a declaration without "declar[ing] that she actually viewed the websites, when and how the pages were printed, or that the print outs accurately reflect the contents of the websites she viewed." *Id.* at *5.  This is nothing like the case at bar, where Mr. Pirko took pains to outline numerous and specific websites he visited, and other sources for his opinions, see Pirko Report at 1-2, and the Declarations provided with this Opposition detail the declarants' personal knowledge of the websites, brands, and products at issue, see, e.g., Disharoon Dec. at ¶ 2 and Evashevski Dec. generally.

If anything, *Cook* is helpful to Fetzer Vineyards, since, although the opponent there raised a hearsay objection, the court instead relied on the above-mentioned authentication shortfalls to bar the evidence.  The only comment the court made as to hearsay was in reference to a prior district court opinion that found, under the facts in front of it, that specific web printouts were hearsay.  *Cook*, 2010 WL 3910478 at *6 (citing *Internet Specialties West, Inc. v. ISPWest*, No. CV 05–3296 FMC AJWX, 2006 WL 4568796 (C.D.Cal. Sept. 19, 2006)).

*Internet Specialties*, in turn, states the following: "Testimony concerning third-party websites may well be admissible.  Certainly, a qualified expert may rely on information he

---

[6] Many of the third-party marks are derived not solely from web printouts as Sazerac asserts.  Rather, several are also subjects of Sazerac's coexistences agreements and/or were physically produced at deposition.  See Part II, *supra*; Disharoon Dec. at ¶¶ 2, 10.

obtained off the internet, even if hearsay, in forming his opinions." *Internet Specialties West, Inc.*, 2006 WL 4568796 at *1. That court went on to hold that a mere web printout, with nothing more, is not reliable and should be excluded; even there, however, it appears the court was concerned more with *authentication* than with hearsay. *Id.* at *1-2.[7]

Once again, the situation in the case at bar is different: Fetzer Vineyards is not attempting to admit the web printouts by themselves, without context or supporting testimony; Fetzer Vineyards is merely using the printouts as a proxy for the products, themselves. In addition, as discussed in the next section, the images, themselves, are not hearsay, and to the extent the Court finds a hearsay issue as to the *fact* the products are in the marketplace, Fetzer Vineyards submits that the attached declarations largely resolve it, and also reiterates that it should be permitted to further cure any such issue at or before trial.

**2)      The evidence here is not hearsay, and if it is, it falls within an exception.**

It is unclear if the cases cited by Sazerac found that *images* on the websites at issue constituted hearsay, as opposed to finding foundational problems with the images and addressing hearsay in the context of any *statements* found on the webpages. If these cases found that *images* on the websites constituted hearsay, Fetzer Vineyards respectfully submits that such findings misapply the hearsay rule.

Federal Rule of Evidence 801 provides that hearsay is an out-of-court "statement" (defined as an assertion or non-verbal conduct). The Ninth Circuit provides that "a photograph is not an assertion, oral, written, or non verbal, as required by Fed.R.Evid. 801(a). Photographs are admissible as substantive as well as illustrative evidence." *United States v. May*, 622 F.2d 1000, 1007 (9th Cir. 1980) (citing cases). In *United States v. Lizarraga-Tirado*, the court made the same finding as to "a Google Earth satellite image," since it, like a photograph, "makes no assertion." 789 F.3d 1107, 1109 (9th Cir. 2015). Fetzer Vineyards' reliance on photographs of labels and similar images does not include assertions or non-verbal conduct, and, thus, the hearsay rule is not

---

[7] The other district court case on which Sazerac relies reaches a similar conclusion: there, the proponent of the evidence attempted to admit web printouts, by themselves and without laying a sufficient foundation or establishing reliability, resulting in the exclusion of the evidence. *Ty Inc. v. Softbelly's Inc.*, No. 00 C 5230, 2006 WL 5111124, at *7–8 (N.D. Ill. Apr. 7, 2006)

implicated.

Since the images at issue are not hearsay, and are merely the vehicle by which Fetzer Vineyards will demonstrate, through testimony of its experts, the prevalence and similarity of these third-party buffalo products, there is no hearsay issue.[8]  However, if the Court finds a hearsay problem with respect to use of the buffalo imagery, such images fall within at least two exceptions: Federal Rule of Evidence 803(17) and/or 807.

Rule 803(17) provides, *inter alia*, that commercial documents, including "[m]arket quotations, lists, [or] directories," are excepted from the hearsay rule.  This Court recently held that this exception applies to the substance of notices published in newspapers. *Curtis v. Extra Space Storage, Inc.*, No. C 13-00319 WHA, 2013 WL 6073448, at *5 (N.D. Cal. Nov. 18, 2013). If the exception applies to the substance of newspapers, it should also apply to imagery on commercial websites.

Rule 807, the "residual exception" to the hearsay rule, provides that a statement should be admitted if (1) there are "circumstantial guarantees of trustworthiness," (2) it goes to a material issue, (3) it is the most probative evidence available on that point, and (4) admitting it will serve the interests of justice.  As outlined at length above and in the accompanying declarations, Fetzer Vineyards has taken pains to establish the trustworthiness and materiality of the third-party buffalo marks at issue, and the interests of justice will be served by allowing it to present such evidence that is traditionally used in trademark cases (an issue of which Sazerac was on notice since the outset of this case).  See *Hawkins v. Cavalli*, No. C 03-3668 PJH, 2006 WL 2724145, at *13 (N.D. Cal. Sept. 22, 2006) (holding that, even if hearsay, computer-generated data "would likely fall under the residual hearsay exception due to their high degree of reliability").  Indeed, it would work an injustice if Fetzer Vineyards was barred from presenting this key aspect of its case, and there is demonstrably no prejudice to Sazerac given how long it has been on notice of the relevance of this issue and the specific third-party brands on which Fetzer Vineyards will rely.

---

[8] Also, Fetzer Vineyards' experts could rely on the images to discuss the third-party products even if the images of them were hearsay. *Internet Specialties West, Inc.*, 2006 WL 4568796 at *1.

Sazerac seems to suggest that Fetzer Vineyards must actually purchase and ship exemplars of every product at issue to Sazerac, and then lug each of these bottles (many of which are glass) to the court for trial.  (Notably, Fetzer Vineyards did the former for several products at issue, and produced them to Sazerac at deposition, where Sazerac agreed that the physical bottles and cans needed not be made exhibits due to the impracticalities of doing so.  Disharoon Dec. at ¶ 10.)  Fetzer Vineyards fails to see why this is necessary – for example, does Sazerac truly dispute that Buffalo Grove wine is currently available for sale at Total Wine, or that Zubrowka Bison Brand Vodka is available at Total Wine and Beverages and More?  See Disharoon Dec. at ¶ 2 (Nos. 1 and 19 in chart).  Nevertheless, if the Court deems it necessary, Fetzer Vineyards will produce physical bottles/cans of every product on which it relies prior to and at trial.

## IV. CONCLUSION

Fetzer Vineyards put Sazerac on notice in November 2015 of this issue, disclosed the evidence at issue in discovery, and supplied many of the physical products to Sazerac; Sazerac was on notice even earlier of several third-party buffalo brands through its pursuit of coexistence agreements.  Sazerac has had the better part of a year to investigate the evidence disclosed by Fetzer Vineyards, inquire as to foundational issues at deposition, and present its own evidence in contradiction.  Sazerac chose not to do so.  Instead, it chose to wait and spring a trial motion on Fetzer Vineyards in efforts to preclude the Court from considering important real-world evidence relevant to the strength and distinctiveness of Buffalo Trace's marks and alleged trade dress.  Fetzer Vineyards respectfully requests that the Court deny the Motion.

DATED:  May 23, 2017

Respectfully submitted,

WOOD, SMITH, HENNING & BERMAN LLP

By: /s/ Steven R. Disharoon
STEVEN R. DISHAROON
Attorneys for DEFENDANT, FETZER VINEYARDS