UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAZERAC COMPANY, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FETZER VINEYARDS, INC.,<br><br>Defendant. | Case No. 3:15-cv-04618-WHO<br><br>**ORDER DENYING MOTION TO STAY EXECUTION OF JUDGMENT PENDING APPEAL WITHOUT SUPERSEDEAS BOND**<br><br>Re: Dkt. No. 168 |

## INTRODUCTION

Sazerac seeks to stay the execution of a $518,817.73 fee judgment pending appeal without posting a supersedeas bond. Execution of the judgment will be stayed. But because I have not seen evidence that Sazerac's ability to pay is "so plain that the cost of the bond would be a waste of money," Sazerac's motion to stay without posting a bond is DENIED. It is required to post a bond 1.2 times the fee judgment, or $622,581.28. This matter is suitable for decision without oral argument, and the hearing is VACATED. Civil L.R. 7-1(b).

## BACKGROUND

After a June 2017 bench trial and August 14, 2017 closing arguments, I issued my Findings of Fact and Conclusions of Law on September 19, 2017. Dkt. No. 141. Judgment in favor of Fetzer and against Sazerac was entered the same day. Dkt. No. 142. On October 3, 2017, Fetzer moved to recover its fees under the Lanham Act. Dkt. No. 150. I granted its motion in part, and awarded Fetzer a $518,817.73 fee judgment. Sazerac now seeks to stay execution of that judgment pending appeal, without a supersedeas bond. Mot. to Stay Execution of J. Pending Appeal Without Supersedeas Bond ("Mot.")(Dkt. No. 168). In opposition, Fetzer insists that a bond 1.5 times the fee judgment is necessary to cover "the accumulation of interest, appellate court costs, and additional attorneys' fees." Opp'n to Sazerac's Mot. to Stay J. Without Posting a

Bond at 8 ("Opp'n")(Dkt. No. 169).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 62(d), an appellant is entitled to stay the execution of a judgment pending appeal by posting a supersedeas bond. Fed. R. Civ. P. 62(d); *see also Am. Civil Liberties Union of Nevada v. Masto*, 670 F.3d 1046, 1066 (9th Cir. 2012)("Had the State complied with the express requirements of Rule 62(d) by appealing the underlying fees order and posting a supersedeas bond with the district court, it would have been entitled to a stay as a matter of right."). "District courts have inherent discretionary authority in setting supersedeas bonds[.]" *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987). Generally, the amount should be sufficient to pay the judgment plus interest, costs, and any other relief, because the purpose "is to secure the appellees from a loss resulting from the stay of execution[.]" *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1028 (N.D. Cal. 2012)(quoting Rachel, 831 F.2d at 1505).

A district court may also waive the bond requirement when staying the execution of a judgment, and "[t]he appellant has the burden to 'objectively demonstrate' the reasons for departing from the usual requirement of a full supersedeas bond." *Id*. (citing *Poplar Grove Planting & Refining Co., Inc. v. Bache Halsey Stuart, Inc.,* 600 F.2d 1189, 1191 (5th Cir. 1979)). In determining whether to require a bond, district courts evaluate the following factors:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Id*. (citing *Dillon v. City of Chicago*, 866 F.2d 902, 904–05 (7th Cir. 1988)).

**DISCUSSION**

**I. THE BRIEFING**

In its motion, Sazerac argues that "the factors all favor waiving the bond requirement" and proceeds through a cursory recitation of each of the factors. Mot. at 1–2. It urges that a

2

supersedeas bond is unnecessary because "there is no risk of the 'money disappearing' in this case." *Id*. at 3 (quoting *Exxon Valdez v. Exxon Mobil*, 568 F.3d 1077, 1085 (9th Cir. 2009)); *see Exxon Valdez v. Exxon Mobil*, 568 F.3d 1077, 1085 (9th Cir. 2009)("The rationale for a supersedeas bond is that there can be no certainty about who is in the right until the appeals are done; the party that lost should not have to pay the winner until the district court's decision is finally affirmed, but in the meantime, the party that won in district court should not be at risk of the money disappearing."). And it attached counsel's declaration that he has worked with Sazerac for several years and it "has always timely paid its legal fees." Willsey Decl. ¶2 (Dkt. No. 168-1).

In opposition, Fetzer argues that the Willsey declaration "provides the Court virtually no information regarding the five *Dillon* factors" and insists that Sazerac "falls far short of carrying its burden" to objectively demonstrate why a bond should not be required. Opp'n at 3 (Dkt. No. 169). Sazerac provides a longer (if not more substantive) argument in reply, contends that "[t]he alarmist speculation that pervades the Opposition is unfounded[,]" and asks me to exercise my discretion in waiving the bond requirement. Reply at 1 (Dkt. No. 170). And it inappropriately seeks to shift the burden to Fetzer to show why a bond *should* be required.[1] *See id.* at 2 ("Fetzer does not attempt to explain why any of Sazerac's arguments are incorrect, and it offers no evidence to cast doubt as to whether any of the applicable *Dillon* factors favor Sazerac… ."); *id*. at 3 ("Nor does Fetzer truly contend – much less support with evidence – that there is a 'risk of [the money] disappearing.'"); *id*. ("Fetzer has no evidence or good faith basis to suggest that Sazerac cannot satisfy the judgment… ."); *id*. at 4 ("Fetzer has produced no evidence of Sazerac's financial instability or weakness… .").

Sazerac also offers a declaration from its Chief Financial Officer, "[n]otwithstanding [its]

---

[1] Sazerac seems to take issue with Fetzer's application of the *Cotton* standard, which requires that an appellant must "objectively demonstrate" the reasons for departing from the usual requirement of a bond. *See* Reply at 2 (discussing *Cotton*, 860 F. Supp. 2d at 1028). But it also cited *Cotton* in its motion and provided an explanation of the case in its reply. *See* Mot. at 1; Reply at 2–3. Regardless, it cannot dispute the *rule's* requirement that an appellant post a bond to seek to stay execution of a judgment. *See* Fed. R. Civ. P. 62(d). That then must be the "usual" rule, *see Cotton*, 860 F. Supp. 2d at 1028 (citing *Poplar Grove Planting & Refining Co., Inc. v. Bache Halsey Stuart, Inc.,* 600 F.2d 1189, 1191 (5th Cir. 1979)), and courts have discretion to deviate from that rule.

3

belief that [one] is unnecessary, out of an abundance of caution" to confirm that "it has sufficient funds to pay the judgment and intends to comply with its obligation to pay any final judgment upheld after [it] has exhausted its appeals." *Id*. at 4–5 (citing Pape Decl. ¶¶ 2–4).[2] It insists that courts analyzing whether to waive the bond do not require a "commitment" and it aims to distinguish the *Power Integrations* case, relied on by Fetzer, by highlighting the defendant's concession that it lacked the financial ability to satisfy the $146,000,000 judgment but offered evidence that its non-party parent company could pay the judgment, if affirmed on appeal. *See* Reply at 4 (discussing *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 09-CV-05235-MMC, 2017 WL 2311249, at *2 (N.D. Cal. May 26, 2017)). It emphasizes that "the judgment in that case was nearly **300 times greater** than the judgment at issue here[,]" and there is no issue with a non-party's commitment to pay the judgment. Reply at 4 (emphasis in original).

## II. ANALYSIS

### A. Waiver of Bond

The fundamental weakness with Sazerac's motion is that it asks me to take on faith its assurances that it is very healthy financially and will write a check if its appeal fails. But it has the burden to overcome the usual rule and the scant evidence it provides does not meet its burden. The Willsey declaration offers no useful evidence. The Chief Financial Officer's is somewhat more substantive, but conclusory. I apply the *Dillon* factors to determine the appropriateness of waiving the bond requirement and staying execution of the judgment pending appeal:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place

---

[2] Fetzer objects to this declaration as improper reply evidence and asks that it be stricken. Fetzer's Objection to Reply Evidence at 1–2 ("Objection")(Dkt. No. 171). In its reply, Sazerac anticipated such an objection and argued that the declaration is proper because it "is offered solely in response to Fetzer's insinuation that Sazerac may be unable or unwilling to pay the judgment." Reply at 5 n.3. I disagree with Sazerac that reply evidence is proper in this situation. The Pape Declaration is clearly not offered "in direct response to evidence raised in the opposition[,]" *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 560 n.87 (C.D. Cal. 2014), because, as Sazerac repeatedly highlights, Fezter did not offer any evidence in opposition.

other creditors of the defendant in an insecure position.
*Dillon*, 866 F.2d at 904–05. Consideration of those factors does not help Sazerac.

On the first two factors, Sazerac argues that no evidence suggests a complex collection process (given both Sazerac entities are parties) or "that it would take any time for Fetzer to obtain the judgment if it is affirmed on appeal." Mot. at 1–2; *see also* Reply at 7 (noting that judgment is against the parties and payment will not be made from a subsidiary or parent company). It also points to the fact that in counsel's experience, "Sazerac has always timely paid its legal fees." Willsey Decl. ¶ 2; *see* Mot. at 2. As previously mentioned, in reply it offers a declaration from its Chief Financial Officer "attest[ing] to the fact that Sazerac has available sufficient assets to satisfy the court's order granting attorneys' fees, plus whatever interest and fees may accrue during the pendency of the appeal." Pape Decl. ¶ 3. He also affirms Sazerac's intent to "comply with the Court's order if it is affirmed after Sazerac has exhausted its appeals." *Id*. ¶ 4. The declaration directly addresses Fetzer's concern that "there is no commitment from Sazerac to pay, and simply no basis to assume that Sazerac will voluntarily pay the adverse Fee Judgment (plus interest, additional fees, and costs) without forcing Fetzer Vineyards to engage in a lengthy and complex collection process." Opp'n at 4. The CFO's belated commitment suggests that the collection process would not be overly complex, nor would it take too long, but the declaration makes no commitment to pay within a specific time frame nor does it provide any actual financial information that could corroborate his assertions. *See Power Integration*, 2017 WL 2311249, at *2 ("The first two factors, which pertain to the ease of collection, are resolved by ON's commitment, assuming one is made, to pay the full amount of the judgment within 30 days of an affirmance[.]").

On the third and fourth factors, Sazerac states that "the Court has recognized that Sazerac is a successful company with increasing revenues, making it clear that Sazerac will have the availability of funds to pay the judgment if it upheld on appeal and that the cost of the bond would be a waste of resources." Mot. at 2. Fetzer contests this characterization and highlights an excerpt from a prior order, in which I found that Sazerac's sole party witness "lacked credibility" in part because he "inflated the number of annual visitors to the distillery by a factor of three." *See*

Opp'n at 5 (quoting Fee Order at 3 n.1). It also contends that Willsey's declaration is insufficient to support Sazerac's ability to timely pay. *Id*. at 6. I agree with Fetzer that an attorney declaration "containing general references to the financial condition of the [judgment debtor] is insufficient." *Studio Transportation Drivers v. Happy Hour Prods., LLC*, 2010 WL 11526878, at *2 (C.D. Cal. Apr. 5, 2010); *but see Kranson v. Fed. Express Corp.*, No. 11-CV-05826-YGR, 2013 WL 6872495, at *1–2 (N.D. Cal. Dec. 31, 2013)("While FedEx does not speak directly to the complexity of the collection process (the first *Dillon* factor), counsel attests that in his experience, payments are issued after submitting a completed payment request. [citation omitted] Based on FedEx's arguments and counsel's declaration, the Court is confident that FedEx has available funds to ultimately pay the judgment to Kranson[.]"). As Fetzer points out, the Willsey declaration does not establish what is meant by "timely," nor does it indicate the amount of the purported payments, so the declaration is not probative of whether Sazerac can and will pay the fee judgment in this case.

Despite the declaration of its CFO and citations to articles noting Sazerac's financial security and success, *see* Reply at 7; Pape Decl. ¶¶ 2–4, it has not offered evidence demonstrating that its "ability to pay the judgment is so plain that the cost of a bond would be a waste of money[.]" *Dillon*, 866 F.2d at 905; *see also Cotton*, 860 F. Supp. 2d at 1028 (N.D. Cal. 2012)("[U]ntil there is absolute certainty that the [entity] has agreed unconditionally to pay the judgment in this case, the mere existence of such possibility is an unacceptable substitute for the guarantees provided by a supersedeas bond.")(quoting another source). I understand that Sazerac seeks to maintain the confidentiality of its financial information since it is a private company, but it could have submitted some quantum of information under seal and subject to the protective order, to quell Fetzer's reasonable concerns. It used the sealing procedures of the court often during this case when it suited its interest, but chose not to do so here. In the absence of any reliable information, Sazerac cannot counter Fetzer's argument that the "usual" requirement of a bond should hold here, nor can Sazerac justify shifting the burden on Fetzer to demonstrate a reason to question Sazerac's financial stability.

The parties dispute the applicability of the final factor—Sazerac insists it is "not

applicable" while Fetzer argues that Sazerac's failure to offer evidence of other creditors that could be harmed by a bond weighs against it. Mot. at 2; Opp'n at 7; Reply at 1. According to the Seventh Circuit in *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, often cited by courts in this district when analyzing the appropriateness of waiving the bond requirement, "an inflexible requirement of a bond would be inappropriate in two sorts of case: where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money; and—the opposite case, one of increasing importance in an age of titanic damage judgments—where the requirement would put the defendant's other creditors in undue jeopardy." 786 F.2d 794, 796 (7th Cir. 1986); *see, e.g.*, *Cotton*, 860 F. Supp. 2d at 1028 (quoting *Olympia*). I have not seen evidence establishing that this case falls into either category. Sazerac aims to focus on the lack of evidence that Fetzer's interests would be harmed if I waived a bond requirement; that is not one of the *Dillon* factors. Under these circumstances, I see no justification for waiving the bond requirement.

## B. Amount of Bond

Fetzer insists that a bond amount 1.5 times the fee judgment, or at least $778,226.50, would ensure its ability to collect the fee judgment, the accumulation of interest over an estimated two years for the Ninth Circuit to hear the appeal, appellate court costs, and additional attorneys' fees. Opp'n at 8. In reply, Sazerac urges that the fee award should provide the upper limit of the bond amount, if I determine one is required. Reply at 9. I am setting the bond at 1.2 times the fee judgment, or $622,581.28, which should be sufficient.

## CONCLUSION

In accordance with the foregoing, Sazerac's request to stay the judgment pending appeal is granted, but its bid to waive the bond requirement is DENIED. It is required to post a bond in the amount of $622,581.28. **IT IS SO ORDERED.**

Dated: January 30, 2018

William H. Orrick
United States District Judge